1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES  DISTRICT COURT

Northern District of California

J & J SPORTS PRODUCTIONS, INC.,

                    Plaintiff,

        v.

DARRELL EUGENE EVENSON, JR.,

                    Defendant.
_____/

No. C 11-5449 JSW (MEJ)

**REPORT & RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**Re: Docket No. 10**

## I.  INTRODUCTION

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") moves for an entry of default judgment against Defendant Darrell Eugene Evenson, Jr., individually and d/b/a Ragg's Rack Room ("Defendant").  Dkt. No. 10.  On February 29, 2012, Plaintiff's motion was referred to the undersigned to prepare a report and recommendation.  Dkt. No. 11.  As Defendant has failed to respond to the motion or otherwise appear, the undersigned VACATES the April 19, 2012 hearing. For the following reasons, the undersigned **RECOMMENDS** that the District Court **GRANT** default judgment against Defendant.

## II.  BACKGROUND

On November 9, 2011, Plaintiff initiated this action by filing a Complaint against Defendant. Compl., Dkt. No. 1.  The relevant facts, taken from Plaintiff's Complaint, are as follows.

Plaintiff is a California corporation with its principal place of business located at 2380 South Bascom Avenue, Suite 200, Campbell, California.  *Id.* ¶ 6.  Pursuant to contract, Plaintiff was granted

1  the exclusive nationwide commercial distribution rights to "*Tactical Warfare*": *Manny Pacquiano v.*

2  *Antonio Margarito, WBC Light Middleweight Championship Fight Program*, telecast nationwide on

3  Saturday, November 13, 2010 (the "Program").  *Id.* ¶ 9.  The Program included all under-card bouts

4  and fight commentary encompassed in the television broadcast of the event.  *Id.*  Also pursuant to

5  contract, Plaintiff entered into sublicensing agreements with various commercial entities throughout

6  North America, by which it granted these entities limited sublicensing rights, specifically the rights to

7  publicly exhibit the Program within their respective commercial establishments in the hospitality

8  industry.  *Id.* ¶ 10.  Plaintiff expended substantial monies marketing, advertising, promoting,

9  administering, and transmitting the Program to these customers.  *Id.* ¶ 11.

10       Defendant is an owner and/or operator of Ragg's Rack Room, operating at 615 5th Street,

11  Eureka, California 95501.  Plaintiff alleges that Defendant unlawfully intercepted and intentionally

12  exhibited the Program at Ragg's Rack Room, for the purpose of direct or indirect commercial

13  advantage.  *Id.* ¶¶ 12, 13.  Specifically, on November 13, 2010, Plaintiff's investigator, Kevin

14  Matlock of Filmeo Investigative Services, entered Ragg's Rack Room and observed the unauthorized

15  broadcast of a portion of the Program on two televisions (42-inch and 36-inch units) and one

16  projected image of approximately 12 feet by 10 feet in size.  Matlock Aff. at 1, Dkt. No. 10-3.

17  Matlock attests that he observed the following: "An HBO PPV fight was being broadcast and was

18  indicated to be Omri Lowther v. Brandon Rios.  After this fight ended, a second fight was observed to

19  be broadcast between Mike Jones and Jesus Soto Karass.  Jones wore white trunks while Soto Karass

20  wore black trunks."  *Id.*  Matlock's affidavit approximates Ragg's Rack Room's capacity at 100

21  people.  *Id.* at 2.  He states that he took two heads counts, which were 50 and 52.  *Id.*

22       In intercepting and exhibiting the Program, Plaintiff alleges that Defendant violated Section

23  605 of the Federal Communications Act of 1934, 47 U.S.C. § 605, as well as Title 47 U.S.C. § 553.

24  Compl. ¶¶ 8-22.  Plaintiff's complaint also includes state law claims for conversion and violation of

25  California Business and Professions Code section 17200, et seq.  *Id.* ¶¶ 23-36.

26       On January 13, 2012, Defendant was served by personal delivery at Ragg's Rack Room.  Dkt.

27  No. 4; Compl. ¶ 7.  Defendant subsequently failed to respond to the Complaint and Plaintiff requested

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1  entry of default, which the Clerk of Court entered on February 14, 2012.  Dkt. No. 7.

2      On February 27, 2012, Plaintiff filed the present Motion for Default Judgment, which seeks

3  judgment on Plaintiff's claims for violation of 47 U.S.C. § 605 and 47 U.S.C. § 553, and for common

4  law conversion.[1]  Dkt. No. 10.  Defendant has failed to appear and has not otherwise responded to

5  Plaintiff's motion.

6                          **III.  DISCUSSION**

7  **A.      Jurisdiction and Service of Process**

8      When considering whether to enter a default judgment, a court has "an affirmative duty to

9  look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712

10  (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void,

11  a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the

12  first place.")

13          1.    Subject Matter Jurisdiction

14      District courts have original jurisdiction to hear civil cases arising under the Constitution,

15  laws, or treaties of the United States.  28 U.S.C. § 1331.  Plaintiff alleges federal causes of action

16  under 47 U.S.C. §§ 605 and 553, as well as causes of action under California state law.  Thus, the

17  Court has subject matter jurisdiction over the federal counts pursuant to 28 U.S.C. § 1331.  In

18  addition, pursuant to 28 U.S.C. § 1367, the Court may exercise supplemental jurisdiction over the

19  California state law claims.  Thus, the Court may properly exercise subject matter jurisdiction.

20          2.    Personal Jurisdiction

21      As the party seeking to invoke this Court's jurisdiction, Plaintiff bears the burden of

22  establishing that the Court has personal jurisdiction over Defendant.  *Scott v. Breeland*, 792 F.2d 925,

23  927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

24

25      [1] The application does not specifically request judgment on Plaintiff's claim that Defendant
26  violated California Business and Professions Code §§ 17200 et seq., and Plaintiff's memorandum in
   support of the application does not address this claim.  Accordingly, the undersigned considers
27  Plaintiff to have abandoned this claim.  *See J & J Sports Productions, Inc. v. Torres*, 2011 WL
   3739613, at *2 (N.D. Cal. Aug. 24, 2011).
28

3

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Here, the Court has jurisdiction because Defendant owns and/or operates Ragg's Rack Room in this

2   district. *J & J Sports Productions, Inc. v. Basto*, 2011 WL 2197756, at *2 (N.D. Cal. Jun. 06, 2011)

3   (finding jurisdiction proper where the defendants owned and operated a business in this district).

4              3.     Service of Process

5        A court is also required to "assess the adequacy of the service of process on the party against

6   whom default is requested." *Joe Hand Promotions, Inc. v. White*, 2011 WL 4406354, at *2 (N.D.

7   Cal. Aug. 02, 2011).  Federal Rule of Civil Procedure ("Rule") 4(e)(2)(A) provides that service is

8   proper if a copy of the summons and complaint is delivered to the individual personally.  Thus, as

9   Defendant was served by personal delivery at Ragg's Rack Room, service upon Defendant was

10  proper. *See Securities & Exchange Comm'n v. Internet Solutions for Business, Inc.*, 509 F.3d 1161,

11  1166 (9th Cir. 2007) ("[a] signed return of service constitutes prima facie evidence of valid service

12  which can be overcome only by strong and convincing evidence.").

13  **B.     Legal Standard**

14       Rule 55(b)(2) permits a court, following a default by a defendant, to enter a final default

15  judgment in a case.  The court has discretion in determining whether to grant or deny a motion for

16  entry of default judgment. *Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986) (citing *Aldabe v.*

17  *Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) ("The district court's decision whether to enter a

18  default judgment is a discretionary one.")).

19       The Ninth Circuit has enumerated several factors which the court may consider in exercising

20  its discretion as to whether an entry of default judgment is proper: (1) the possibility of prejudice to

21  the plaintiff; (2) the merits of the plaintiff's substantive claim and the sufficiency of the complaint;

22  (3) the sum of money at stake; (4) the possibility of dispute concerning material facts; (5) whether

23  default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil

24  Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

25       In applying this discretionary standard, the factual allegations contained in the plaintiff's

26  complaint will be taken as true, except for those relating to the amount of damages. *Televideo*

27  *Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also Kingvision Pay-Per-View,*

28

4

1   *Ltd. v. Rivers*, 2000 WL 356378, *1 (N.D. Cal. Mar. 28, 2000) ("Generally, upon an entry of default,

2   the factual allegations of the plaintiff's complaint will be taken as true.").

3       Where a default judgment is granted, the scope of relief is limited by Rule 54(c): "A default

4   judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

5   **C.      Application to the Case at Bar**

6           1.    Prejudice to Plaintiffs

7       Under the first *Eitel* factor, the Court must examine whether Plaintiffs will suffer further

8   prejudice if default judgment is not granted. *Eitel*, 782 F.2d at 1471-72. Here, if the motion for

9   default judgment were to be denied, then Plaintiff would likely be left without a remedy given

10  Defendant's failure to appear or otherwise defend this action. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.

11  Supp. 2d 1172, 1177 (C.D. Cal. 2002). Thus, this factor weighs in favor of Plaintiff.

12          2.    Sufficiency of the Complaint and Likelihood of Success on the Merits

13      The second and third *Eitel* factors address the sufficiency of Plaintiff's Complaint and

14  probability of success on the merits of the underlying claims. *Walters v. Statewide Concrete Barrier,*

15  *Inc.*, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("A party seeking default judgment must

16  state a valid claim upon which to recover."). Plaintiff makes claims for (1) violation of 47 U.S.C. §

17  605; (2) violation of 47 U.S.C. § 553; and (3) conversion.

18      47 U.S.C. § 605 "prohibits commercial establishments from intercepting and broadcasting to

19  its patrons satellite cable programming." *J & J Sports Prods., Inc. v. Mosley*, 2011 WL 2066713, at

20  *3 (N.D. Cal. Apr.13, 2011). In contrast, 47 U.S.C. § 553 "prohibits a person from intercepting or

21  receiving or assisting in intercepting or receiving any communications service offered over a cable

22  system." *Id.* "A signal pirate violates section 553 if he intercepts a cable signal, [but] he violates

23  [section] 605 if he intercepts a satellite broadcast." *J & J Sports Prods., Inc. v. Manzano*, 2008 WL

24  4542962, at *2 (N.D. Cal. Sep. 29, 2008). "Plaintiff may not recover under both 47 U.S.C. § 605 and

25  47 U.S.C. § 553." *J & J Sports Prods. v. Ro*, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010).

26      Here, Plaintiff alleges violations of both 47 U.S.C. § 605 & § 553, claiming that it cannot

27  tell which damages scheme is appropriate since Defendant did not answer the Complaint. However,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Plaintiff does not include § 553 in its itemized damages calculation; instead, Plaintiff seeks statutory

2    and enhanced damages under § 605 only.  Riley Decl. ¶ 7, Dkt. No. 10-2.  Plaintiff contends that

3    damages under § 605 are proper, arguing that it "should not be prejudiced because it cannot isolate

4    the precise means of signal transmission."  Pl.'s Mem. in Supp. at 3, Dkt. No. 10-1.  Beyond alleging

5    that it should not be "prejudiced," Plaintiff offers no explanation as to why it is entitled to relief under

6    § 605, the statute with the higher minimum damages award and requirement for attorneys' fees and

7    costs, rather than § 553.  As another court held in considering a similar request for default judgment:

8    "Plaintiff argues that it 'should not be prejudiced' because it cannot determine the means of

9    transmission, however, if plaintiff wanted to prove this, they could have filed a third party subpoena

10   or requested an order for inspection."  *J & J Sports Prods. v. Ro*, 2010 WL 668065, at *3 (N.D. Cal.

11   Feb. 19, 2010).  The *Ro* Court noted that a defendant's default does not eliminate the opportunity to

12   take third party discovery.  *Id.*

13        It is unlikely that a defendant would use both a cable box and a satellite dish to broadcast a

14   single program simultaneously.  *See, e.g., J & J Sports Prods., Inc. v. Wood*, 2011 WL 6961334, at *4

15   (N.D. Cal. Nov. 02, 2011)*; J & J Sports Prods., Inc. v. Seldner*, 2011 WL 2650961, at *2 (N.D. Cal.

16   Jul. 6, 2011); *J & J Sports Prods., Inc. v. Guzman*, 2009 WL 1034218, at *2 (N.D. Cal. Apr. 16,

17   2009).  Here, the investigator provided no statement regarding whether he looked for either a satellite

18   dish or a cable box, or whether he saw either.  Further, the pictures provided by the investigator

19   provide no evidence of a satellite dish.  Decl. of Aff., Dkt. No. 10-3.  In similar situations, courts

20   have found that as between the two it is less likely that a satellite dish was used because "a cable box

21   is more easily hidden."  *J & J Sports Prods., Inc. v. Guzman*, 2009 WL 1034218, at *2; *see also J & J

22   Sports Prods., Inc. v. Mosley*, 2011 WL 2066713, at *3; *J & J Sports Prods. v. Ro*, 2010 WL 668065,

23   at *3.  Accordingly, the Court concludes that Plaintiff has failed to state a claim for relief under 47

24   U.S.C. § 605 and recommends that the motion for default judgment be denied on the § 605 claim.

25        However, the undersigned finds that Plaintiff has sufficiently alleged a basis for relief under

26   47 U.S.C. § 553.  Plaintiff has established through Mr. Matlock's affidavit that Defendant exhibited

27   the Program without permission, and the undersigned finds that § 553 is the more likely violation.

28

6

1   *See J & J Sports Prods. Inc. v. Man Thi Doan*, 2008 WL 4911223, at *3 (N.D. Cal. Nov. 13, 2008).

2           Plaintiff has similarly stated a claim for relief on the conversion claim under California Civil

3   Code section 3336.  The elements of a conversion claim in California are "(1) ownership or right to

4   possession of property, (2) wrongful disposition of the property right and (3) damages." *G.S.*

5   *Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992).  Plaintiff alleges

6   ownership over the nationwide distribution rights for the Program, Defendant's misappropriation of

7   this ownership right through the intentional and unlawful interception of the Program, and damages

8   based on the denial of the license fee to which Plaintiff would otherwise have been entitled.  Thus,

9   the undersigned finds that Plaintiff has adequately stated a claim for conversion.  *See J & J Sports*

10  *Prods., Inc. v. Wood*, 2011 WL 6961334, at *4-5.

11          Accordingly, the undersigned concludes that Plaintiff has adequately stated a claim under 47

12  U.S.C. § 553 and for conversion, and this *Eitel* factor therefore weighs in favor of a default judgment

13          3.      The Sum of Money at Stake in the Action

14          The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment

15  is entered against Defendant.  In making this assessment, the Court must take into account the amount

16  of money at stake in relation to the seriousness of the defendant's conduct.  *Eitel*, 782 F.2d at 1471.

17  If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's

18  actions, properly documented, and contractually justified, then default judgment is warranted.  *Bd. of*

19  *Trs. Of Ca. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. Dec. 15,

20  1997).  In the instant action, the amount of money at stake suggests that default judgment may be

21  inappropriate.  Plaintiff seeks the maximum possible statutory damages in this action, $110,000, plus

22  $2,200 for the tort of conversion.  Riley Decl. ¶ 7, Dkt. No. 10-2.  In this regard, Plaintiff's damages

23  request is disproportionate to the harm alleged.  *See Joe Hand Promotions, Inc. v. Meola*, 2011 WL

24  2111802, at *4, (N.D. Cal. Apr. 22, 2011); *J & J Sports Prods., Inc. v. Wood*, 2011 WL 6961334, at

25  *3.  Thus, this factor weighs against default judgment.

26          4.      Possibility of Dispute Concerning Material Facts

27          The fifth *Eitel* factor considers the possibility of dispute as to any material facts of the case.

28

7

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Here, as discussed above, Plaintiff has sufficiently alleged all the facts necessary to maintain its claim

2    for relief.  Further, as Defendant has made no attempt to challenge the accuracy of the complaint, no

3    dispute of material fact exists that would preclude the District Court from granting Plaintiff's motion.

4    Accordingly, this factor weighs in favor of default judgment.

5              5.       Possibility of Excusable Negligence

6              The sixth *Eitel* factor contemplates the possibility that Defendant's default was the result of

7    excusable neglect.  Under this analysis, the Court considers whether Defendant was put on adequate

8    notice to apprise him of the pendency of the action.  *Phillip Morris USA, Inc. v. Castworld Products,*

9    *Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  In addition, the Court also considers whether the

10   circumstances surrounding Defendant's failure to answer the Complaint are sufficient to excuse or

11   justify default.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal.

12   2001) (Default cannot be attributed to excusable neglect where defendants were properly served with

13   the complaint, the notice of entry of default, and the papers in support thereof).

14             Here, Plaintiff properly served Defendant and there is no evidence in the record that

15   Defendant's failure to appear and otherwise defend this action was the result of excusable neglect.

16   Consequently, it appears that Defendant had the ability and every reasonable opportunity to oppose

17   the underlying action, and there are no grounds on which the undersigned can find that the default

18   resulted from excusable neglect.

19             6.       Policy for Deciding on the Merits

20             Under the final *Eitel* factor, the Court must consider the strong policy of the federal courts in

21   favoring decisions on the merits.  However, this policy is not dispositive; rather, the Court still has

22   great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel*

23   factors.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Furthermore, the "defendant's failure to answer the

24   plaintiff's complaint makes a decision on the merits impracticable, if not impossible."  *Id.*  As a

25   consequence, the policy of favoring decisions on the merits does not necessarily preclude a court

26   from granting a default judgment when the defendant fails to respond.  *Walters*, 2006 WL 2527776,

27   at *6.  Here, Defendant has failed to participate in the proceedings brought against him, despite

28

8

1  adequate notice and opportunity to do so.  Thus, default judgment is appropriate despite the strong

2  policy of the federal courts in favoring decisions on the merits.

3         7.  <u>Summary</u>

4        Based on the analysis above, the undersigned find that the *Eitel* factors weigh in Plaintiff's

5  favor, and therefore **RECOMMENDS** that the District Court **GRANT** Plaintiff's motion and enter

6  default judgment against Defendant.

7  **D.  Relief Sought**

8        1.  <u>Damages</u>

9        Plaintiff argues that it is entitled to statutory damages under 47 U.S.C. § 605(e)(3)(c) as well

10 as enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) in the statutory maximum amount of

11 $110,000.  In light of the above conclusion that Plaintiff has failed to state a claim for relief under §

12 605, the undersigned instead analyzes Plaintiff's request for statutory damages under § 553.

13       Under 47 U.S.C. § 553(c)(3)(A)(ii), Plaintiff is entitled to damages of no less than $250, but

14 no more than $10,000, in an amount the Court considers just.  "The Court may also enhance the

15 award of damages by up to $50,000 if it finds that the conduct was 'committed willfully and for the

16 purposes of commercial advantage or financial gain.'"  *J & J Sports Prods., Inc. v. Seldner*, 2011 WL

17 2650961, at *1 (quoting 47 U.S.C. § 553(c)(3)(B)).  In determining damages under this section,

18 courts consider a variety of factors including "use of a cover charge, increase in food price during

19 programming, presence of advertising, number of patrons, number of televisions used, and impact of

20 offender's conduct on claimant."  *J & J Sports Prods., Inc. v. Concepcion*, 2011 WL 2220101, at *4

21 (N.D. Cal. Jun. 7, 2011).  Courts also consider whether a defendant is a repeat offender.  *See, e.g., J*

22 *& J Sports Prods., Inc. v. Paniagua*, 2011 WL 996257, at *2 (N.D. Cal. Mar. 21, 2011) (awarding

23 enhanced damages for a repeat offender).  In addition, courts consider the actual cost of a commercial

24 license, defendant's incremental profits, and the need to deter piracy.  *See, e.g., J & J Sports Prods.,*

25 *Inc. v. Mosley*, 2011 WL 2066713, at *5 (calculating actual losses based on the license fee and an

26 estimate of defendant's potential profits); *J & J Sports Prods. v. Ho*, 2010 WL 3912179, at *1 (N.D.

27 Cal. Oct. 5, 2010) (stating that "[a] traditional method of determining statutory damages is to estimate

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1  either the loss incurred by the plaintiff or the profits made by the defendants") (internal citations

2  omitted).

3        Plaintiff submits evidence that a commercial license for the broadcast of the Program would

4  have cost Defendant $2,200, based on Defendant's 100–person establishment capacity. *See* Affidavit

5  of Joseph M. Gagliardi, President of J & J Sports Productions, Inc., ¶ 8, Ex. 2. Alternatively, as to

6  potential profits of Defendant, Plaintiff submits evidence that between 50 and 52 patrons were

7  present at Ragg's Rack Room at the time of the Program, and that there was a $5.00 cover charge.

8  Matlock Aff.  However, as there is no evidence that all patrons present paid the cover charge, nor is

9  there evidence of how much Defendant made during the unlawful exhibition of the Program, the

10  undersigned finds it appropriate to base statutory damages on the cost of the commercial license.

11  Accordingly, the undersigned finds that Plaintiff is entitled to $2,200 in statutory damages.

12        Plaintiff also seeks enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), which the

13  undersigned will instead analyze under 47 U.S.C. § 553(c)(3)(B).  Plaintiff seeks the maximum

14  amount of enhanced damages, in this case $50,000.  The Court has discretion to enhance the damages

15  where "the violation was committed willfully and for the purposes of direct or indirect commercial

16  advantage or private financial gain . . . ."  47 U.S.C. § 553(c)(3)(B).  Plaintiff contends that it is

17  impossible that its signal was mistakenly, innocently, or accidentally intercepted.  The undersigned

18  agrees that Defendant financially benefitted from the illegal interception both by avoiding paying the

19  licensing fee and presumably attracting additional patrons who spent more time in the establishment

20  watching the Program. *See J & J Sports Prods, Inc. v. Mosley*, 2011 WL 2066713, at *7 (awarding

21  $2,500 in enhanced damages after finding that defendant acted willfully in unscrambling the signal

22  transmitting copyrighted material).

23        In addition, Mr. Matlock's affidavit states that Defendant imposed a $5.00 cover charge.  Dkt.

24  No. 10-3 at 1.  Plaintiff has also directed the Court's attention to an additional action brought forth

25  against Defendant involving claims of commercial signal piracy at Ragg's Rack Room. *Joe Hand*

26  *Promotions v. Evenson, Jr.*, C-11-3844 JSW.  The undersigned agrees with Plaintiff that a higher

27  amount of enhanced damages is also appropriate given the allegations of Defendant's multiple

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1   violations and the $5.00 cover charge.  *Garden City Boxing Club, Inc. v. Lan Thu Tran*, 2006 WL

2   2691431, at *2 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages and $5,000 in

3   enhanced damages when 40 patrons were present and a $10 cover charge was imposed); *J & J Sports*

4   *Prods., Inc. v. Paniagua*, 2011 WL 996257, at *2 (awarding $2,200 in statutory damages and $4,400

5   in enhanced damages when 80-85 patrons were present and there were allegations that the defendant

6   was a repeat offender).  Thus, in light of Defendant's affirmative misconduct and in order to deter

7   future willful violations, the undersigned recommends imposing an enhanced damages award of

8   $5,000.  Together with the statutory damages, the award under § 553 totals $7,200.  Such an award

9   (particularly in light of the conversion damages and fees and costs discussed below) serves the

10   purpose of removing profits from Defendant and deterring future piracy.

11             2.       Conversion

12             Plaintiff alleges that it is entitled to damages on the conversion claim based on the value of

13   the property at the time of conversion.  Plaintiff seeks $2,200 in conversion damages based on the

14   amount Defendants would have been required to pay had they ordered the Program from Plaintiff.

15   Gagliardi Aff. ¶ 8, Ex. 2.  The undersigned finds this reasonable and recommends awarding Plaintiff

16   the total amount of damages sought on the conversion claim, $2,200.

17             3.       Attorneys' Fees and Costs

18             In its motion, Plaintiff fails to address whether it seeks attorneys' fees and costs.  However, in

19   his Declaration submitted in support of Plaintiff's Proposed Findings of Fact and Conclusions of

20   Law, Plaintiff's counsel, Thomas P. Riley, states that Plaintiff seeks $4,165.19 in costs and attorneys'

21   fees pursuant to 47 U.S.C. § 605(e)(3)(b)(iii).  Riley Decl., Ex. 1, Dkt. No. 14-1; Pl.'s Prop. Findings

22   at 8-9, Dkt. No. 14.  As discussed above, the undersigned declines to use § 605 in this analysis and

23   instead analyzes Plaintiff's claim for fees and costs under § 553, which allows the Court to award

24   reasonable attorneys' fees and costs.  *See* 47 U.S.C. § 553(c)(2)(c).

25             District courts must calculate awards for attorneys' fees using the "lodestar" method.  *Ferland*

26   *v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001) (citing *Caudle v. Bristow Optical*

27   *Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 1996).  The lodestar is calculated by multiplying the number

28

1   of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Id.*

2   The party seeking an award of fees should "submit evidence supporting the hours worked and rates

3   claimed," and if the evidence is lacking, "the district court may reduce the award accordingly."

4   *Hensley v. Eckerhard*, 461 U.S. 424, 433 (1983).  Once calculated, the lodestar rate may be adjusted

5   to account for other factors, including the customary fee, nature and length of the professional

6   relationship between client and attorney, and the awards allowed in similar cases. *Morales v. City of*

7   *San Rafael*, 96 F.3d 359, 363 n.9 (9th Cir. 1996).

8               a.      Fees

9          A reasonable hourly rate is that prevailing in the community for similar work performed by

10  attorneys of comparable skill, experience, and reputation.  *Moreno v. City of Sacramento*, 534 F.3d

11  1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

12  The relevant community is "the forum in which the district court sits," which here is the Northern

13  District of California. *Camacho*, 523 F.3d at 979.  The party requesting fees must produce

14  satisfactory evidence–in addition to the attorney's own affidavits or declarations–that the rates are in

15  line with community rates. *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984); *Jordan v. Multnomah*

16  *Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

17         "In determining a reasonable number of hours, the Court must review detailed time records to

18  determine whether the hours claimed by the applicant are adequately documented and whether any of

19  the hours were unnecessary, duplicative or excessive." *Defenbaugh v. JBC & Assoc., Inc.*, 2004 WL

20  1874978, at *3 (N.D. Cal. Aug.10, 2004) (citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205,

21  1210 (9th Cir.1986)).  Where there is a lack of opposition to a party's motions, or where the instant

22  action is routine or substantially similar to prior actions brought by the same attorney, a court may

23  find requests for attorneys' fees excessive. *See, e.g., Owens v. Brachfeld*, 2008 WL 5130619, at *2

24  (N.D. Cal. Dec. 5, 2008) (where the court awarded only half the requested fees because defendants

25  did not oppose the plaintiff's motions and the drafting document was "a matter of course in his

26  practice" and "almost identical" to similar motions); *Sanchez v. Bank of Am.*, 2010 WL 2382347, at

27  *5 (N.D. Cal. Jun. 10, 2010) (in calculating attorneys' fees, the court reduced the number of

28

UNITED STATES DISTRICT COURT
For the Northern District of California

12

1   reasonable hours from 89.8 to thirty, in light of the fact that defendant had "defended itself in

2   near-identical prior actions by other plaintiffs" represented by the same attorney).

3          Plaintiff seeks $3,105 in attorneys' fees.  In support of its request, Plaintiff's counsel

4   submitted a declaration and an itemized computation describing the services rendered and hours

5   billed.  However, counsel's declaration indicates that the chart is not based on billing records, but is

6   "reconstructed" based on the file.  Riley Decl. ¶ 6, Dkt. No. 14-1 (explaining the apparent lack of

7   actual billing records by noting that, "Having handled thousands of commercial signal piracy files

8   over the last decade and a half, we are most capable of calculating billable hours for legal services

9   rendered.").  *Id.*  Based on Mr. Riley's declaration, Plaintiff provides the following summary:

10          Timekeeper AA worked 5.74 hours at $75.00 per hour, totaling $430.50.
            Timekeeper PRL worked .25 hours at $150.00 per hour, totaling $37.50.
11          Timekeeper RSA worked 4.00 hours at $300.00 per hour, totaling $1,800.00
            Timekeeper TPR worked 1.86 hours at $450.00 per hour, totaling $837.00

12

13   *Id.* Ex. 1.

14          Without actual billing records, however, the Court gives little weight to these figures.  *See*

15   *Zynga Game Network Inc. v. Erkan*, 2010 WL 3463630, at *2 (N.D. Cal. Aug. 31, 2010) (denying

16   motion for attorneys' fees where plaintiff failed to attach "actual billing records"); *Joe Hand*

17   *Promotions, Inc. v. Be*, 2011 WL 5105375, at *7 (N.D. Cal. Oct. 26, 2011).  Thus, because the billing

18   records were not created contemporaneously, and were instead submitted as one summary of fifteen

19   months of work, the undersigned finds that they are inherently less reliable.

20          In short, Plaintiff's billing records fall short of the type of detailed time records courts require.

21   *See, e.g., Hensley*, 461 U.S. at 438 n. 13 (finding that the district court properly reduced the hours of

22   one attorney by thirty percent to account in part for his failure to keep contemporaneous time

23   records); *Joe Hand Promotions, Inc. v. Be*, 2011 WL 5105375, at * 7 (N.D. Cal. Oct. 26, 2011)

24   (denying plaintiff's request for attorneys' fees under nearly identical circumstances); *Zynga Game*

25   *Network*, 2010 WL 3463630, at *2 (denying a motion for attorneys' fees where plaintiff failed to

26   attach actual billing records).

27          Further, the undersigned finds Plaintiff's request for six hours for preparation of the proposed

28

UNITED STATES DISTRICT COURT
For the Northern District of California

13

UNITED STATES DISTRICT COURT
For the Northern District of California

findings of fact and supportive declaration to be questionable.  First, despite the fact that this represents nearly half of the time – 13.85 hours total – that Plaintiff seeks for all work in this case, Plaintiff provides no breakdown of the 6 hours it seeks.  In contrast, Plaintiff's remaining time is broken down into increments as small as .10 hours.  Second, Plaintiff has requested only 1.5 hours – one quarter the amount of time requested for the proposed findings – for preparation of the motion for default judgment and supportive documents.  Given that much of the information in the proposed findings is taken directly from the motion, it is unclear why Plaintiff is requesting four times the amount of attorneys' fees for identical information it already prepared and filed.  As to any differences between the motion and the proposed findings (such as information related to its request for attorneys' fees), Plaintiff should have provided this information as part of its default judgment motion.  Thus, it is unclear what duplicative efforts could have been avoided by providing the information in the first instance.  Third, in a case with the same counsel and nearly identical filings, *Innovative Sports Management, Inc. v. Hinojosa, et al.*, C-11-3813 YGR, Mr. Riley claimed twelve hours for preparation of proposed findings that are largely the same as the proposed findings presented in this case, with changes made for factual differences.  In that case, counsel also provided no time breakdown.  *Innovative Sports Management, Inc. v. Hinojosa, et al.*, Dkt. No. 33.  In response, the undersigned recommended that Plaintiff's request for attorneys' fees be reduced by one-half.  *Id.*, Dkt. No. 34.  Despite that warning, counsel submitted the same block charge here.  Although the request is for six rather than twelve hours, the undersigned finds it suspect that Plaintiff has once again failed to provide a breakdown for the time spent, yet seems to have chosen exactly six hours, the time awarded in *Hinojosa*, for the amount it now seeks.  As counsel states, "Having handled thousands of commercial signal piracy files over the last decade and a half, we are most capable of calculating billable hours for legal services rendered."  Riley Decl. ¶ 6.  Given such confidence in the ability to calculate billable hours, counsel should be able to provide a more accurate record.

The undersigned also notes that Plaintiff appears to claim duplicative and excessive time for review of administrative documents issued by the Court.  For example, Plaintiff claims that Mr. Riley

14

1   and an unidentified administrative assistant spent .10 hours each to review the Court's ADR

2   Scheduling Order, the Clerk's Notice regarding Entry of Default, the Clerk's Notice of Impending

3   Reassignment to U.S. District Judge, Court Order regarding Case Reassignment, referral of the

4   default judgment motion to a randomly assigned magistrate judge for a report and recommendation,

5   and review of the Clerk's Notice regarding assignment to the undersigned for a report and

6   recommendation.  Riley Decl., Ex. 1.  Given that Plaintiff claimed no such time in the *Hinojosa*

7   matter discussed above, it is doubtful that Plaintiff is entitled to such duplicative and excessive time

8   for review of mere administrative documents in this case.

9          Moreover, based upon the "routine" nature of counsel's work on this matter, the lack of

10   opposition to Plaintiff's motions, and the boilerplate nature of the pleadings, the undersigned is

11   reluctant to allow recovery for the full attorneys' fees request.

12          Finally, Plaintiff's submission does not include appropriate documentation justifying recovery

13   of attorneys' fees, with the exception of extremely limited information regarding Mr. Riley.  Indeed,

14   "counsel has provided no documentation to justify recovery of attorney's, paralegal or administrative

15   fees, such as a curriculum vitae or resume, or billing and cost records [other than] a reconstruction of

16   services and hours long after the fact."  *Joe Hand Promotions, Inc. v. Be*, 2011 WL 5105375, at *7.

17   Based on these and other issues with Plaintiff's time records, the undersigned recommends that

18   Plaintiff's request for attorneys' fees be reduced by one-half and that Plaintiff be awarded $1,552.50

19   in attorneys' fees.

20          b.      Costs

21          With respect to Plaintiff's request for $1,065.19 in costs, this amount is based on the

22   following: $605 for investigative costs + $350 for the complaint filing fees + $109.75 for the process

23   server + $12.06 for postage charges.  Riley Decl., Ex. 1.  Although Plaintiff has provided no

24   documentation as part of its motion in support of many of these requests, a review of the docket

25   shows that Plaintiff paid $109.75 for the process server and $350 for filing fees.  Dkt. Nos. 1, 4.

26   Accordingly, Plaintiff is entitled to $459.75 in costs.  However, the undersigned finds that Plaintiff's

27   remaining costs should not be awarded.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    First, Plaintiff's pre-filing investigation costs are not recoverable. *Koppinger v.*

2    *Cullen–Schiltz & Assocs.*, 513 F.2d 901, 911 (8th Cir. 1975) (finding that certain costs were not

3    recoverable because they were "purely investigative in nature"); *Kaiser Industries Corp. v. McLouth*

4    *Steel Corp.*, 50 F.R.D. 5, 13 (E.D. Mich.1970) (finding that preliminary investigations were not

5    recoverable); *Joe Hand Promotions, Inc. v. Be*, 2011 WL 5105375, at *7 (denying plaintiff's request

6    for $500 in investigative costs under identical circumstances). Second, Plaintiff provides no

7    explanation or documentation regarding the costs it seeks for postage charges. Accordingly, these

8    costs should not be awarded.

9    Based on this analysis, the undersigned recommends the Court award $459.75 in costs.

10   ### IV. CONCLUSION

11   The undersigned recommends that the Court **GRANT** Plaintiff's Motion for Default

12   Judgment (Dkt. No. 10) as to the claim under 47 U.S.C. § 553 (Count II) and the conversion claim

13   (Count III) and **DENY** the motion as to the claim under 47 U.S.C. § 605 (Count I). The undersigned

14   recommends that judgment be entered in favor of Plaintiff against Defendant on these claims. The

15   undersigned further recommends that Plaintiff be awarded a total of $9,400 in damages ($2,200 in

16   statutory damages, $5,000 in enhanced damages, and $2,200 for conversion damages), and that the

17   Court award attorneys' fees in the amount of $1,552.50 and costs in the amount of $459.75.

18   Plaintiff shall serve a copy of this report and recommendation on Defendant within three days

19   from the filing date of this Order and shall file a proof of service with this Court.

20   Any party may file objections to this report and recommendation with the district court judge

21   within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b);

22   Civil L.R. 72–3. Failure to file objections within the specified time may waive the right to appeal the

23   District Court's ultimate Order.

24   **IT IS SO RECOMMENDED.**

25

26   Dated: April 16, 2012

27   _____
     Maria-Elena James
     Chief United States Magistrate Judge

28

16